1

2

Presented to the Court by the foreman of the
Grand Jury in open Court, in the presence of
the Grand Jury and FILED in the U.S.
DISTRICT COURT at Seattle, Washington.

3

_____May 31_____, 20 23

Ravy Subramanian, Clerk

4

By_____ Deputy

5

6

7     UNITED STATES DISTRICT COURT FOR THE
      WESTERN DISTRICT OF WASHINGTON
8     AT SEATTLE

9

10    UNITED STATES OF AMERICA,                 NO. **CR23 - 090 JHC**

11                   Plaintiff

12                                              **INDICTMENT**

13
                         v.
14

15

16

17    3. JAHRI ASAD CUNNINGHAM
         aka Ale Cartel
18       aka Ale Cartell
         aka Minah Cunning,
19

20

21

22                   Defendants.

23        The Grand Jury charges that:

24    //

25    //

26

27

Indictment - 1
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## COUNTS 1-19

### (Wire Fraud)

**A.    Overview**

1.    From about June 2020 until February 2022, Defendants

JAHRI ASAD

CUNNINGHAM,

and others known and unknown to the Grand Jury,

fraudulently sought more than $6.8 million, and obtained more than $3.3 million, from various federally-funded COVID-19 pandemic relief programs.  They used the funds intended to assist individuals and businesses suffering from the economic impacts of the pandemic for extravagant expenses such as luxury cars, lavish trips, cosmetic surgery, jewelry, and designer goods.

2.    Defendants' scheme targeted the following COVID-19 pandemic relief programs: U.S. Department of Treasury's Emergency Rental Assistance program administered through Washington State grant programs and King County Eviction Prevention and Rental Assistance Program (EPRAP); the Paycheck Protection Program (PPP) administered by the U.S. Small Business Administration (SBA); the Economic Injury Disaster Loan (EIDL) Program administered by SBA; and federally-funded COVID-19 unemployment benefits administered through various state workforce agencies, including those in California, South Carolina, and Nevada.

3.    orchestrated the scheme and artifice to defraud.

CUNNINGHAM,                                                    used their own identities, including numerous aliases and the identities of others, to submit multiple fraudulent applications to various programs.                                                    and

received kickback payments for fraudulently obtained benefits.

created and submitted fake bank statements and other documents to support

Indictment - 2
*United States v.*          *et al.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 the fraudulent applications she and her associates submitted.          and others,
2 also created, used, and maintained multiple email accounts, sometimes using alias names,
3 to perpetuate the fraudulent scheme.  Upon receipt of the fraudulent proceeds, the
4 Defendants quickly laundered the funds through cash withdrawals, wire transfers, and
5 expensive purchases.

6 **B.    Background**

7          4.    ***Emergency Rental Assistance.***  In response to millions of Americans
8 facing deep rental debt, fear of evictions, and the loss of basic housing security as a result
9 of the COVID-19 pandemic, the U.S. Department of Treasury's Emergency Rental
10 Assistance program provided funding directly to state and local governments to assist
11 households that were unable to pay rent or utilities.  From March 2021 through 2022,
12 Treasury's Emergency Rental Assistance program allocated over $900 million to
13 Washington State and local governments, including King County.  The Washington
14 Department of Commerce received and administered the state's federal funds by
15 providing grants to county governments and non-profit organizations to support the
16 homeless crisis response systems in the state.  In King County, the Department of
17 Community and Human Services distributed over $300 million in direct federal funds and
18 state grants to approximately 30,000 King County households through EPRAP.  Non-
19 Profit Organization 1, which is based in Seattle, also received over $5 million in
20 federally-funded rental assistance grants from the Washington Department of Commerce
21 and distributed the funds to approximately 700 households.

22          5.    To qualify for rental assistance, the household must have been low-income,
23 experiencing financial hardship due to the COVID-19 pandemic, and been at risk of
24 experiencing homelessness or currently experiencing housing instability.  Tenants and
25 landlords could receive up to 12 months of rental assistance (nine months back or current
26 rent and three months advance).  The administering agencies acknowledged that there
27

Indictment - 3
*United States v.*
USAO No. 2021R00479

1 was insufficient funding to help every household who qualified, thus, the screening

2 criteria was intended to target those most likely to become homeless but for the

3 assistance.

4      6.     At all times relevant to this Indictment, in King County, a landlord could

5 initiate an application for EPRAP assistance by submitting a delinquent tenant's

6 information, and the tenant and landlord could submit self-attestation forms to document

7 eligibility. Landlords were also required to submit W-9 forms and, upon request,

8 evidence of a lease or ledger. After EPRAP calculated the final assistance amount,

9 landlords received an EPRAP agreement by email that they were required to sign and

10 return via DocuSign using interstate wire transmissions. The agreement certified that the

11 signee was authorized to accept the emergency rental assistance payment in satisfaction

12 of rent owed by a tenant.

13      7.     King County initiated payment of the EPRAP funds by using an interstate

14 wire to upload payment information to a bank server located outside Washington State.

15 EPRAP funds were disbursed to landlords via checks or ACH payments using interstate

16 wire transmissions.

17      8.     Non-Profit Organization 1 followed a similar application process for

18 distributing rental assistance to community members by requiring a Rent Payment

19 Agreement signed by the landlord and tenant and a W-9 from the landlord. Applicants

20 also submitted ledgers and leases. In at least some cases, assistance was disbursed by

21 check to the landlords.

22      9.     ***Paycheck Protection Program***. PPP was a COVID-19 pandemic relief

23 program administered by SBA that provided forgivable loans to small businesses for job

24 retention and certain other expenses. The PPP permitted participating third-party lenders

25 to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities,

26 rent/mortgage, accounts payable and other bills incurred by qualifying businesses during

27

Indictment - 4
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  and resulting from the COVID-19 pandemic. PPP loans were fully guaranteed by the
2  SBA. In the event of default, SBA will fully satisfy the lender for any balance remaining
3  on the loan. Further, SBA will forgive any loan up to 100 percent if the borrower uses
4  the funds for specified purposes.

5       10.    To obtain a PPP loan, a qualifying business, which included certain sole
6  proprietorships, had to submit a PPP loan application, which was signed by an authorized
7  representative of the business. The PPP loan application required the business (through
8  its authorized representative) to acknowledge the program rules and make certain
9  affirmative certifications to be eligible to obtain the PPP loan, including that the business
10  was in operation on February 15, 2020 and either had employees for whom it paid
11  salaries and payroll taxes or paid independent contractors. A business applying for a PPP
12  loan was required to provide documentation showing its payroll expenses, such as filed
13  federal income tax documents.

14       11.    Individuals who operated a business under a "sole proprietorship" business
15  structure were also eligible for a PPP loan. To qualify for such a PPP loan, individuals
16  had to report and document their income and expenses from the sole proprietorship, as
17  typically reported to the Internal Revenue Service on a "Form 1040, Schedule C," for a
18  given tax year. As with other PPP loans, this information and supporting documentation
19  was used to calculate the amount of money the individual was entitled to receive under
20  the PPP. The maximum loan amount for a sole proprietorship with no employees was
21  approximately $20,833.

22       12.    At all times relevant to this Indictment, PPP loan documents were
23  electronically submitted or caused to be submitted by the borrower to a third-party lender
24  service provider, which did not have any servers in Washington State. The borrower
25  signed the loan documents using DocuSign, which has servers within and outside
26  Washington State, and data for a single customer could reside in multiple locations. The
27

Indictment - 5
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  third-party lender service provider accessed the signed loan documents and caused those
2  documents to be sent to a third-party lender that did not have any servers located within
3  Washington State. Therefore, every PPP loan document relevant to this Indictment and
4  initiated online from Washington State, resulted in an interstate wire communication that
5  originated in Washington State and traveled to another state.

6      13.    Once approved, the business received the PPP loan proceeds via an
7  electronic funds transfer from the third-party lender to a financial account under the
8  control of the business. The proceeds of a PPP loan could be used for certain specified
9  items, such as payroll costs, costs related to the continuation of group health care
10  benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted
11  to be used by the borrowers to purchase consumer goods, automobiles, personal
12  residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to
13  fund the borrower's ordinary day-to-day living expenses unrelated to the specified
14  authorized expenses.

15      14.    ***Economic Injury Disaster Loan Program.*** SBA also administers the EIDL
16  Program, which provides low-interest financing to small businesses and non-profit
17  organizations in regions affected by declared disasters. In March 2020, the Coronavirus
18  Aid, Relief, and Economic Security (CARES) Act authorized the SBA to provide EIDLs
19  of up to \$2 million to eligible small businesses experiencing substantial financial
20  disruption due to the COVID-19 pandemic. The CARES Act and subsequent legislation
21  also authorized the SBA to issue advances of up to \$10,000 to small businesses within
22  three days of applying for an EIDL. EIDL Advances did not have to be repaid. EIDL
23  funds can be used for payroll expenses, sick leave, production costs, and business
24  obligations, such as debts, rent, and mortgage payments.

25      15.    A qualifying business, which could include sole proprietorships, that
26  applied for an EIDL had to submit an application to the SBA and provide information

27

Indictment - 6
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. The applicant had to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

16.     Applicants submitted EIDL applications online directly to the SBA for processing. SBA directly disbursed EIDL funds to an account identified by the applicant. In all instances relevant to this Indictment, when an applicant submitted an COVID-19 EIDL application online, SBA received it at a server outside Washington State. Therefore, every COVID-19 EIDL application relevant to this Indictment and submitted online from Washington State, resulted in an interstate wire communication that originated in Washington State and traveled to another state.

17.     ***COVID-19 Unemployment Benefits.*** The CARES Act also provided federal funding to expand unemployment benefits eligibility and increased benefits, including the Pandemic Unemployment Assistance Program (PUA), Federal Pandemic Unemployment Compensation (FPUC), and the Lost Wages Assistance Program (LWAP). These benefits were administered through a joint state and federal program that provided monetary benefits to eligible beneficiaries. Unemployment benefits were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own.

18.     CARES Act unemployment benefits were funded by the United States government through the Department of Labor and administered at the state level by state agencies known as state workforce agencies. Generally, applicants could submit applications for benefits online to state workforce agencies. Applicants had to answer specific questions to establish eligibility to receive benefits, including their name, social security number, and mailing address, among other things. Applicants also had to self-

1  certify that they met a COVID-19-related reason for being unemployed, partially
2  employed, or unable to work.

3      19.  Emergency Rental Assistance, EIDL, PPP funds, and CARES Act
4  unemployment benefits were authorized, transferred, disbursed, and paid in connection
5  with a nationwide emergency declared by Presidential Proclamation 9994 (effective as of
6  March 1, 2020) and a Presidential declaration of a major disaster for the State of
7  Washington concerning the COVID-19 pandemic that was issued on March 22, 2020.

8  **C.  The Scheme and Artifice to Defraud**

9      20.  Beginning on or about April 4, 2020, and continuing until at least on or
10  about February 11, 2022, in King County, within the Western District of Washington,
11  and elsewhere, Defendants

12      JAHRI ASAD CUNNINGHAM,

13      and others, knowingly devised a scheme and artifice to defraud and to
14  obtain money and property by means of false and fraudulent pretenses and
15  representations and the concealment of material facts.

16      21.  The essence of the scheme and artifice to defraud was to fraudulently
17  obtain federally-funded pandemic-related benefits and assistance by submitting
18  fraudulent applications, documents, and/or claims to administrating government agencies
19  and financial institutions and/or lenders. The scheme and artifice to defraud occurred in
20  relation to, and involved, benefit payments authorized, transmitted, transferred,
21  disbursed, and paid in connection with a presidentially-declared major disaster and
22  emergency.

23  **D.  Manner and Means**

24      The following conduct was part of the scheme and artifice to defraud:

25      22.  **Emergency Rental Assistance.**  directed her associates,
26  including  CUNNINGHAM,  , and

27

Indictment - 8
*United States v.*  *et al.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  others to use their true identities and aliases, to pose fraudulently as landlords for
2  property located within King County, and to obtain rental assistance for non-existent
3  tenants. Defendants created and used multiple email accounts and Voice over Internet
4  Protocol (VoIP) phone numbers in furtherance of the scheme. Defendants created and
5  used fake rental agreements, ledgers, and other documents to support the fraudulent
6  applications. Defendants impersonated and directed others to impersonate fictitious
7  tenants and landlords when EPRAP staff contacted them by phone, text, or email. At all
8  times relevant to this Indictment, the owners of the King County properties listed on the
9  ERPAP applications were owned by individuals or entities who were not the Defendants
10 or their aliases. In fact, none of the Defendants owned any property in King County, nor
11 were they the tenants they impersonated.

12 received kickback payments for applications they submitted on behalf of other fictitious
13 landlords.                    and others, paid                    kickbacks for the applications she
14 submitted using their identities.

15     23.    For example, on or about September 27, 2021,                    instructed
16            how to impersonate a landlord on a fraudulent EPRAP application she
17 submitted and discussed the kickback payment she expected:

| Sender | Text Message |
|---|---|
|  | I just gave this place your number<br>Your my landlord lol<br>Behind 6 months<br>Lol I'll give you 3k lol<br>[REDACTED ADDRESS] Seattle WA 98178<br>Rent is 2200 |
|  | And next month is coming up on the 5th lol 😊 so really 7 months |
|  | Yeah and they pay 3 months ahead |
|  | So that's 10 months<br>Lol 😊 |
|  | Yeah lol |
|  | That's 22,000 I need 5k minimum lol 😊 |

Indictment - 9
United States v.
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| |
|---|
| Lol I got you free bands lol |
| Lol when did you say rent is due |
| 3rd<br>They won't ask that tho<br>Just for your email |
| Oh ok coo |
| This is your email<br>[Email Address 1] |
| No<br>[REDACTED EMAIL ADDRESS] |
| Use that one I sent you lol<br>I have that one from last time |
| Oh ok coo<br>I'll give them that email |

24.     Approximately one week after the texts, on or about October 4, 2021,

business checking account received $21,450 in EPRAP funds for a fictitious tenant named Laura Johnson who allegedly lived at the Seattle address referenced in the communications.

25.     When EPRAP funds began to run low in January 2022, Defendants learned that program staffers were prioritizing applications from tenants who had received eviction notices. In response, in at least one instance, CUNNINGHAM represented that he evicted fictitious tenants with the intention of expediting the processing and payment of his EPRAP applications.

26.     In total, between on or about August 27, 2021, and February 11, 2022, Defendants and others submitted over 78 EPRAP applications, seeking over $2.8 million and obtaining over $2.7 million in federal Emergency Rental Assistance funds by executing the scheme and artifice to defraud. Non-Profit Organization 1 also disbursed approximately $29,000 in rental assistance funds to                     posing as a landlord.

27.     In addition to the kickback payments                     received from her associates and co-defendants,                     received more than $740,000 in EPRAP funds posing as a landlord on at least 21 EPRAP applications.                     received more than

Indictment - 10
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  $250,000 in EPRAP funds posing as a landlord on at least seven ERPAP applications.

2  CUNNINGHAM sought more than $225,000 in EPRAP funds for at least five EPRAP

3  applications and successfully obtained approximately $125,000 after $100,000 was

4  recalled. In addition to kickback payments            received from her associates,

5            received more than $150,000 from at least five ERPAP applications. In

6  addition to kickback payments            received from his associates,

7  received more than $183,000 from at least five EPRAP applications.

8        28.    Defendants withdrew large sums of fraudulent Emergency Rental

9  Assistance funds as cash.            used over $90,000 in cash and wire transferred

10  funds, from the proceeds and kickbacks she received, to buy a 2018 Range Rover sport

11  utility vehicle and a 2017 Lexus ES Sedan. At least in part to conceal the illegal source

12  of the funds,            CUNNINGHAM,

13  withdrew large sums of the proceeds as cash for various purposes, including paying

14  kickback payments to            in the form of cash that could not be traced through

15  the banking system.

16        29.    **EIDL.** Beginning no later than June 25, 2020, until at least on or about

17  August 17, 2021,                    CUNNINGHAM,

18            together with those known and unknown, submitted or authorized to submit

19  at least 35 fraudulent EIDL applications to SBA using the identities of themselves and

20  others, seeking a total of approximately $3.7 million. SBA approved and disbursed funds

21  for two of these fraudulent applications, paying out approximately $300,000 using

22  interstate wire transmissions. For a third application in            identity, SBA

23  disbursed a $1,000 EIDL Advance.

24        30.                    CUNNINGHAM,

25  and others, submitted or authorized the submission of knowingly fraudulent EIDL

26  applications in their identities as sole proprietorships. In many instances, in exchange for

27

Indictment - 11
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  facilitating and submitting the fraudulent applications, the individuals agreed to pay

2        a kickback upon receipt of the funds.

3      31.   Many of the individuals, including CUNNINGHAM and .        . are

4            relatives or close associates. Defendants CUNNINGHAM and .

5  and others, would provide            with personal identifying information and bank

6  account numbers to receive the funds.              and others, would enter false

7  business information, such as gross revenue and costs of goods and submit the

8  applications to SBA using interstate wire transmissions.

9      32.            also submitted at least three fraudulent EIDL applications to

10  SBA using her own identity.

11     33.            maintained multiple email accounts and repeatedly used the

12  same four email addresses—Email Address 1 (which was also subsequently used on

13  EPRAP applications), Email Address 2, Email Address 3, and Email Address 4—for at

14  least 29 EIDL applications. Email Address 1 was used for at least 12 applications,

15  including one in          identity. Email Address 2 was used for at least three

16  applications, including one in          identity. Email Address 3 was used for at

17  least nine applications, including ones in '        and CUNNINGHAM's identities.

18  Email Address 4 was used for at least five applications.

19     34.            submitted multiple fraudulent applications with identical or

20  strikingly similar business information. All of the applicants claimed to be sole

21  proprietorships, and most of the business or trade names followed the naming convention

22  of using the accomplice's first name followed by "LLC." For instance, the trade name

23  for JAHRI CUNNINGHAM's fraudulent EIDL application was "JahriLLC." Most of the

24  fictitious entities, including those of            UNNINGHAM, and

25  claimed to provide hair and nail services.

26

27

Indictment - 12
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    35.    Four of the applications claimed to have the exact same amount in gross

2  revenues—$1,347,232.  An additional three applications also claimed approximately

3  $1.347 million in gross revenues but had slightly different amounts for the last three

4  digits.  In all seven instances, the cost of goods sold were approximately $50,000, with

5  three of the applications stating the exact same cost of $49,323.  These three applications

6  were all submitted within 35 minutes on July 13, 2020, using the following three business

7  trade names: "Salon LLC," "Salon LLC," and "SalonLLC."

8    36.    **PPP.**  Between on or about April 10, 2021 and May 23, 2021, after

9  Congress authorized a third and final round of PPP funding,                    along with

10                and others, submitted at least 13 fraudulent PPP applications to lenders who

11  then transmitted the loan files to SBA using interstate wire transmissions, seeking a total

12  of approximately $253,000.  In exchange for facilitating and submitting the fraudulent

13  applications, the individuals agreed to pay                    a kickback upon receipt of the

14  funds.

15    37.    At least 11 of the identities used for fraudulent EIDL applications were also

16  used for fraudulent PPP applications, and all claimed to be sole proprietorships.

17  However, this time, instead of claiming to provide hair and nail services, most of the PPP

18  applications falsely claimed that the individuals were sole proprietorships that began

19  providing food delivery services on January 1, 2020.

20    38.                also submitted at least two fraudulent PPP applications using

21  aliases of her own identity.

22    39.    In multiple instances,                created fictitious bank statements to

23  submit in support of the loan applications.

24    40.                used the fraudulent PPP proceeds and kickbacks she obtained

25  to fund luxury shopping sprees and travel, including a trip to Miami in June 2021 during

26  which she rented a Lamborghini.

27

Indictment - 13
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

41.    **Unemployment Benefits.**  Between on or about April 4, 2020, until at least on or about August 7, 2021,                along with                CUNNINGHAM, and others, conspired to submit fraudulent applications to various state workforce agencies for pandemic unemployment benefits, using their true identities and the identities of others.

**E.    Execution of the Scheme and Artifice to Defraud.**

42.    On or about the dates set forth below, in King County, within the Western District of Washington, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, the defendants specified in each Count, and others, aiding and abetting each other, did knowingly transmit and cause to be transmitted, by wire communication in interstate and foreign commerce, the following writings, signs, signals, pictures and sounds, each transmission of which constitutes a separate count of this Indictment:

| Count | On or About Date | Defendant(s) | Wire |
|-------|-----------------|--------------|------|
| 1 | July 1, 2020 | | Interstate wire originating in Washington to an SBA server outside Washington to submit EIDL application for "Barber" using            identity |
| 2 | July 13, 2020 | | Interstate wire originating in Washington to an SBA server outside Washington to submit EIDL application for "Salon LLC" using L.B.'s identity |
| 3 | July 12, 2020 | | Interstate wire originating in Washington to an SBA server outside Washington to submit EIDL application for "Cut N Up" using            identity |

Indictment - 14
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | On or About Date | Defendant(s) | Wire |
|---|---|---|---|
| 4 | August 6, 2020 | | Interstate wire originating in Washington to an SBA server outside Washington to submit EIDL application for "ArthurLLC" using A.W.'s identity |
| 5 | August 7, 2020 | CUNNINGHAM | Interstate wire originating in Washington to an SBA server outside Washington to submit EIDL application for "JahriLLC" using CUNNINGHAM's identity |
| 6 | April 29, 2021 | | Interstate wire originating in Washington to third-party lender service provider server outside Washington to upload supporting bank statement for fraudulent PPP loan application in Sh.W.'s identity |
| 7 | May 14, 2021 | | Interstate wire originating in Washington to server outside Washington to transmit signed PPP loan documents for loan in identity |
| 8 | May 27, 2021 | | Interstate wire originating in Washington to server outside Washington to transmit signed PPP loan documents for loan in J.K.'s identity |
| 9 | November 19, 2021 | | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $83,280 into bank account for EPRAP landlord ' |
| 10 | November 19, 2021 | | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $76,308 into s bank account for EPRAP landlord " |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | On or About Date | Defendant(s) | Wire |
|-------|------------------|--------------|------|
| 11 | November 12, 2021 | | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $33,300 into ] bank account for EPRAP landlord " ] |
| 12 | December 10, 2021 | | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $41,160 into ; bank account for EPRAP landlord ' |
| 13 | December 30, 2021 | CUNNINGHAM | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $88,260 into CUNNINGHAM's bank account for EPRAP landlord "Minah Cunning" |
| 14 | January 21, 2022 | | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $41,580 to A.H.'s bank account for EPRAP landlord A.H. |
| 15 | January 21, 2022 | | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $86,520 into business bank account for EPRAP landlord ' |
| 16 | January 21, 2022 | CUNNINGHAM | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $37,340 into CUNNINGHAM's bank account for EPRAP landlord "Ale Cartel" |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | On or About Date | Defendant(s) | Wire |
|-------|-----------------|-------------|------|
| 17 | January 21, 2021 | | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $80,100 into _____ bank account for EPRAP landlord ' |
| 18 | January 28, 2022 | | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $72,900 into _____ business bank account for EPRAP landlord |
| 19 | January 28, 2022 | | Interstate wire originating in Washington to bank server outside Washington to initiate payment of $216,825 into _____ bank account for EPRAP landlord ' |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 20-24

### (Money Laundering—Concealment)

43.     The Grand Jury incorporates by reference Paragraphs 1 through 42 of this Indictment as if fully set forth herein.

44.     On or about the dates listed below, in King County, within the Western District of Washington, the Defendants specified below did knowingly conduct, and attempt to conduct, financial transactions affecting interstate and foreign commerce which involved the proceeds of some unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

45.     When the defendants conducted and attempted to conduct these transactions, they knew that the transactions were designed in whole or in part to conceal

Indictment - 17
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and disguise the nature, source, ownership, and control of the proceeds of the specified
unlawful activity, and while conducting and attempting to conduct the transactions, knew
that the financial transactions represented the proceeds of some form of unlawful activity.

46.     Each of the transactions listed below represents an additional count of this
Indictment:

| Count | Defendant | On or About Date | Financial Transaction | Amount |
|-------|-----------|------------------|-----------------------|--------|
| 20 | | November 15, 2021 | Second of two cash withdrawals from KeyBank account | $5,000 |
| 21 | | November 24, 2021 | Cash withdrawal from Bank of America account | $10,000 |
| 22 | | December 24, 2021 | Cash withdrawal from BECU business bank account | $9,700 |
| 23 | | January 24, 2022 | Cash withdrawal from PMorgan Chase Bank account | $20,000 |
| 24 | CUNNINGHAM | January 26, 2022 | Second of two cash withdrawals from CUNNINGHAM's JPMorgan Chase account | $1,000 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 25-26

### (Money Laundering—Spending)

47.     The Grand Jury incorporates by reference Paragraphs 1 through 46 of this
Indictment as if fully set forth herein.

48.     On or about the dates listed below, in King County, within the Western
District of Washington, Defendant `            did knowingly and willfully engage in a

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the withdrawal, deposit, and transfer of funds from and to the financial institutions identified below, such property having been derived from specified unlawful activity, that is wire fraud:

| Count | Defendant | On or About Date | Monetary Transaction | Amount |
|-------|-----------|------------------|----------------------|--------|
| 25 | | November 22, 2021 | Wire Transfer from Bank of America account to Auto Dealer 1's Wells Fargo account for 2017 Lexus ES Sedan | $31,343.12 |
| 26 | | February 18, 2022 | Cash payment to Auto Dealer 1 for a 2018 Range Rover Sport Utility Vehicle | $60,000.00 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

The allegations contained in Counts 1–26 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture.

Upon conviction of any of the offenses alleged in Counts 1–19,

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), any property that constitutes or is traceable to proceeds of the wire fraud scheme described above. This property includes, but is not limited to:

a.  a judgment for a sum of money reflecting the proceeds the defendant obtained as a result of the wire fraud scheme;

b.  one 2018 Range Rover Sport Utility Vehicle; and

c.  one 2017 Lexus ES Sedan.

Upon conviction of either of the offenses alleged in Counts 25 and 26,

shall forfeit to the United States pursuant to

Indictment - 19
United States v.
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | Title 18, United States Code, Section 982(a)(1), any property involved in the offense or
2 | traceable to such property. This property includes, but is not limited to:

3 |     a. one 2018 Range Rover Sport Utility Vehicle; and

4 |     b. one 2017 Lexus ES Sedan.

5 |     Upon conviction of any of the offenses alleged in Counts 3, 7, 15, 18, and 19,

6 |     shall forfeit to the United States pursuant to Title 18,

7 | United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code,

8 | Section 2461(c), any property that constitutes or is traceable to proceeds of the wire fraud

9 | scheme described above. This property includes, but is not limited to, a judgment for a

10 | sum of money reflecting the proceeds the defendant obtained as a result of the wire fraud

11 | scheme.

12 |     Upon conviction of the offense alleged in Count 23,

13 | shall forfeit to the United States pursuant to Title 18, United States Code, Section

14 | 982(a)(1), any property involved in the offense or traceable to such property.

15 |     Upon conviction of any of the offenses alleged in Counts 5, 13, and 16, JAHRI

16 | ASAD CUNNINGHAM shall forfeit to the United States pursuant to Title 18, United

17 | States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section

18 | 2461(c), any property that constitutes or is traceable to proceeds of the wire fraud scheme

19 | described above. This property includes, but is not limited to, a judgment for a sum of

20 | money reflecting the proceeds the defendant obtained as a result of the wire fraud

21 | scheme.

22 |     Upon conviction of the offense alleged in Count 24, JAHRI ASAD

23 | CUNNINGHAM shall forfeit to the United States pursuant to Title 18, United States

24 | Code, Section 982(a)(1), any property involved in the offense or traceable to such

25 | property.

26 |

27 |

Indictment - 20
*United States v.*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Upon conviction of any of the offenses alleged in Counts 10, 12, and 14,

2 .                    shall forfeit to the United States pursuant to Title 18, United States

3   Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), any

4   property that constitutes or is traceable to proceeds of the wire fraud scheme described

5   above. This property includes, but is not limited to, a judgment for a sum of money

6   reflecting the proceeds the defendant obtained as a result of the wire fraud scheme.

7    Upon conviction of the offense alleged in Count 21,

8   shall forfeit to the United States pursuant to Title 18, United States Code, Section

9   982(a)(1), any property involved in the offense or traceable to such property.

10    Upon conviction of any of the offenses alleged in Counts 1, 11, and 17,

11                    shall forfeit to the United States pursuant to Title 18, United

12   States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section

13   2461(c), any property that constitutes or is traceable to proceeds of the wire fraud scheme

14   described above. This property includes, but is not limited to, a judgment for a sum of

15   money reflecting the proceeds the defendant obtained as a result of the wire fraud

16   scheme.

17    Upon conviction of the offense alleged in Count 20, ]

18                    shall forfeit to the United States pursuant to Title 18, United States Code,

19   Section 982(a)(1), any property involved in the offense or traceable to such property.

20    Upon conviction of the offenses alleged in Counts 15, 18, and 19, .

21                    shall forfeit to the United States pursuant to Title 18, United States Code,

22   Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), any

23   property that constitutes or is traceable to proceeds of the wire fraud scheme described

24   above. This property includes, but is not limited to, a judgment for a sum of money

25   reflecting the proceeds the defendant obtained as a result of the wire fraud scheme.

26

27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Upon conviction of the offense alleged in Count 22,

2  shall forfeit to the United States pursuant to Title 18, United States Code, Section

3  982(a)(1), any property involved in the offense or traceable to such property.

4    **Substitute Assets.** If any of the above-described forfeitable property, as a result

5  of any act or omission of the defendants,

6          a.    cannot be located upon the exercise of due diligence;

7          b.    has been transferred or sold to, or deposited with, a third party;

8          c.    has been placed beyond the jurisdiction of the Court;

9          d.    has been substantially diminished in value; or,

10         e.    has been commingled with other property which cannot be divided

11             without difficulty,

12  it is the intent of the United States to seek the forfeiture of any other property of the

13  //

14  //

15

16

17

18

19

20

21

22

23

24

25

26

27

Indictment - 22
*United States v. ]*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    defendant, up to the value of the above-described forfeitable property, pursuant to

2    Title 21, United States Code, Section 853(p).

3

4                                    A TRUE BILL:   ✓

5                                    DATED:   May 31, 2023

6                                           *Signature of Foreperson redacted pursuant
                                            to the policy of the Judicial Conference of
7                                           the United States.*

8
                                    FOREPERSON
9

10

11   NICHOLAS W. BROWN
     United States Attorney
12

13

     SETH WILKINSON
14   Assistant United States Attorney

15

16   CINDY CHANG
     Assistant United States Attorney
17

18

19

20

21

22

23

24

25

26

27

Indictment - 23
*United States v. J*
USAO No. 2021R00479

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970